Speak, J.
The contention here relates wholly to the legal effect of the transaction involving the giving of the notes last referred to in the foregoing statement. The first claim of the Company was upon notes and mortgage given for a loan of money to John Strawn, and the other upon notes and mortgage given to sesüre a sum advanced by the Company to enable the deceased to pay premiums upon a policy of life insurance issued by the Company on the life of one Edward L. Roberts, and by him assigned to the Company as collateral security for the loan made to Strawn. it was claimed by the administrator, and heirs, and found by the common pleas and circuit courts, that the loan of money and the issuing of the policy were parts of one and the same transaction, and were a mere device on the part of the Company for securing upon the loan a larger rate of interest than the legal rate; that the transaction was usurious, and that the Company was entitled only to the face of the loan with interest at six per cent., less certain payments which they claimed had been made. Pertinent facts, necessary to an understanding of the questions presented follow:
April 30, 1889, John Strawn applied to the Union Central Life Insurance Company for a loan of twelve-thousand, five hundred dollars for five years with interest at seven per cent., payable annually, tendering as security a mortgage upon two hundred and forty-four acres of land, being part of the land involved in this suit. The Company declined to loan the amount on the security alone *489 of the land, but would do so if added thereto there were given the additional security of a life insurance policy. Thereupon, May 30, 1889, Strawn executed and delivered to the Company five principal notes for the loan, one for $10,500, due in five years, and four for $500 each, due in one, two, three and four years, with interest coupons attached to each for annual interest, and a mortgage to secure the same on the land referred to. Also another mortgage on the same land to secure the payment of four premium notes of $532 each, due in one, two, three and four years, and to bear interest at eight per cent.after maturity,the notes being executed by Edward L. Roberts and John Strawn,and given for the payment of annual premiums on the policy of insurance issued by the Company on the life of Roberts. The policy was a ten-year annual life rate endowment policy which required all payments to be paid up in ten years. In order to give the policy value as collateral the premium for five years was paid in advance; that is, five annual premiums at the regular rate were properly discounted and thus paid at the inception of the policy. This payment was made by the advance of the amount by the Company and evidenced by the notes of the insured (Roberts) and John Strawn, secured by mortgage by Strawn as stated above, the notes being treated by the Company, as between it and the insured, as cash. The policy was then assigned by Roberts to the Company as collateral to the mortgage given to secure the larger loan. Roberts was a minor, eighteen years of age, a grandson of Strawn, and the trial court found Strawn had an insurable interest in the life of Roberts solely from the fact that Roberts was his grandson, no other relation existing between them giving such interest. It further found that the *490 policy is not a wagering policy, and for that reason not illegal, void, or without consideration. Strawn himself was not an insurable subject on account of his advanced age, and hence the requirement that the policy be upon the life of another and that Strawn should secure the payment of the premiums. The grandson was without means and unable to pay them. The policy was made payable to the insured, if living at maturity, and in case of death prior to maturity, to his executors, administrators or assigns. It acknowledged receipt of $532, the first premium, and the four notes of like amount payable in one, two, three and four years, secured by mortgage, and containing a provision that failure to pay any one of the notes at maturity would give the Company the right, at its election, to avoid the policy, but it does not appear that the Company had exercised that right. It was the habit of the Company to require the assignment as collateral security of policies in the manner above mentioned, although there was no written rule to that effect. The court found that the mortgage was ample security at the time the loan was taken independent of the assignment of the policy. Many facts are found by the trial court, but the foregoing statement is believed to embrace all that are necessary to an understanding of the points decided.
No substantial claim of fraud, or deceit, or circumvention practiced by either party, is made; nor is it seriously claimed that the transaction was misunderstood by the parties,, either as to its terms or legal effect. The issues are issues of cold law.
Three grounds are stated and argued by counsel for defendants in error as supporting the conclusion of the courts below that the transaction is void and *491 not enforceable against the administrator of John Strawn, viz.:
1. Because of the minority of Edward L. Roberts and his inability to make a valid contract for insurance, or to assign the same.
2. That the insurance was void because -John Strawn had no insurable interest in the life of Edward L. Roberts, and the same was, therefore, a wagering policy.
3. Because the whole transaction connecting the life insurance feature wdth the loan was a mere shift and device to compass usury and was, therefore, illegal.
As to the first proposition it is sufficient to say that a contract by a minor is voidable only, and that at his election. The other contracting party cannot avail himself of the lack of power on the part of the minor to conclusively bind himself as a reason for refusing performance on his part. Hence the contract cannot be said to be absolutely void. In the present case the record does not show that the insured has elected to avoid the contract, although it does show that he has long since reached his majority. Nor is he a party in the case, and his rights in the matter, ^whatever they may be, cannot be adjudicated here.
Respecting the second proposition, it is apparent that the question of insurable interest on the part of John Strawn in the life of Roberts is not involved in the inquiry. It is true that the grandfather procured the making of the contract of insurance, but the policy was made payable to the grandson (the insured), and, in case of his decease before maturity, to his executors, administrators or assigns. So that, in legal intendment, it wms a contract wholly between the Company and the insured. The courts below *492 held that the contract was not a wagering contract,, and in this we agree with them.
The third proposition is of more gravity. It raises the question whether an insurance company, in the making of a loan of its surplus funds can lawfully require of the borrower that a life policy be taken from that company and assigned to it as collateral security for the proposed loan. It would seem that the matter' of the amount of the security otherwise tendered cannot have weight, for the parties are at full liberty to agree upon the amount of security to be.taken, as they are to make any other contract not inhibited by law,, and a contract, otherwise legal, is not to be invalidated because a court may be of opinion that more security has been exacted than was necessary. Had the policy been taken out in some other company, and assigned as collateral, no one would have thought of interposing the claim of usury. The objection must rest, if well founded, upon some fact other than the quantum of security. Put in other words, the question is: May a loaner of money at the time of agreeing upon the loan,also agree with the borrower,for the execution between them of another contract, by which a part of the money loaned is to be paid to the lender as consideration for the lender’s promise to pay a larger sum on a future contingency (a contract fair in itself and lawful), without tainting the loan transaction with usury? Authorities which seem to hold the negative of this proposition are adduced, and, regarded in the light of principle, the writer might have difaculty in reaching a satisfactory conclusion. But the question seems not to be an open one in this court. In the case of the same plaintiff in error against MorroAv et al.’, reported in 16 O. C. C., 351, it is held by the circuit court that: “Where a life *493 insurance company requires of an applicant for a loan at the same time to take out an insurance policy on his life on the usual terms and conditions, such insurance and the premiums paid thereon will not be considered as compensation in addition to legal interest for the loan, and usurious.” And a recovery was had. On error’ by Morrow to this court the judgment was affirmed, 61 Ohio St., 661. It is suggested that in that case usury was not distinctly pleaded. Whether so or not, the facts were pleaded, and the record sufficiently disclosed facts warranting a holding against the Company had the court been of opinion that an insurance contract of the character indicated could not be made by the parties without tainting the loan with usury.
But it is insisted that the Morrow case is not authority in this case because the insurance contract was different in that in the Morrow case the insurance was effected on the life of the borrower himself, wliile here it was issued upon the life of another in whose life the borrower had no insurable interest. Assuming without holding that the borrower was without insurable interest in the life of the insured, does it follow that the contract of Strawn with respect to the payment of the premium notes was invalid? We confess our inability to see that it does. If the policy had been made payable to Strawn, the point wrould be well taken; but being payable to the insured, and not to Strawn,the rule as to insurable interest is not pertinent. If, then, the insurance contract, and Strawn’s notes for premiums, are not invalid on that score, and if, as we have found, the requiring of a life policy by the Company is not to be regarded as compensation in addition to legal interest for the loan, and so usurious, what is left here but an inquiry as *494 to consideration? Applying the familiar rule that one may lawfully contract with another for the benefit, of a third, it would hardly be doubted that the grandfather might pay premiums on a life policy for the-grandson and present him with the policy. Why not? If the purchase were a horse, oa? a farm, would anyone doubt the legality of it? And if he might buy outright and pay, why might he not buy on credit? Could he, in a suit by the vendor of a horse so purchased, or of a farm, be heard to say that he had no interest in the beneficiary and hence his obligation had no validity? The consideration moving from the Company was its agreement to pay the. policy at maturity, or at death if sooner; and the payment of the first five premiums by the grandfather for the-benefit of the grandson constituted a sufficient consideration to. support his pledge of the policy fo.r the benefit of the grandfather, at least to the extent of premiums paid, and entirely good until he should elect to avoid the transaction.
Decisions are not lacking, and many are cited, to the effect that where the borrower is induced to make with the lender some unusual and unfair additional contract, as to buy a piece of land from the lender at an exorbitant price, or give a note to secure a loan of gold at a higher rate than the market value in addition to legal interest, the contract will be held usurious. But it does not appear that the insurance contract in this case was unusual, or that the rate charged or the terms imposed were other than those which were customary.
It is further urged that the whole contract is unconscionable and its execution would result in great, hardship. The former claim, we suppose, must stand on the question whether or not it is illegal. As to the *495 latter claim, it does appear to work a hardship as it has turned out. But had the young man died soon after the issuing of the policy, or during the time for which the premiums had been paid, the apparent hardship would have been on the other party. It was held by a fast bargain, and would have been compelled to pay, for no court would have listened to a defense by the Company, had such been interposed, based on the ground here urged by defendants in error, viz.: the inability of the minor to make a binding contract. In case of default by Strawn in the payment of his loan the Company would have been required to first exhaust tbe mortgage security, and, only in the event that that proved insufficient, could it have resorted to the proceeds of the policy. The balance would have belonged to the insured’s legal representatives, subject possibly to advances on account of premiums. In this view the question of insurable interest on the part of the grandfather becomes immaterial, and the complaint of wagering contract untenable.
Viewing the case as presenting a legal claim on the part of the Company, and following the former decision with respect to the main point of contention, we are led to the conclusion that the judgments below should be reversed, and the cause remanded to the court of common pleas with direction to enter judgment upon its previous finding of facts and in conformity with this opinion.

Reversed.

Minshall, J., dissents.